# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG DIVISON

**LINDSEY J. CERESINI, individually and as Administratrix of the Estate of LINDA JEAN MONROE, deceased,**

    **Plaintiff,**

v.

**NEFTALI VIGIL GONZALES, an individual; CRUZ LOGISTICS, INC., a Maryland corporation; PARCEL DELIVERY EXPRESS, INC., a Maryland corporation; AMAZON.COM, INC., a Delaware corporation; AMAZON.COM SERVICES, LLC, a Delaware LLC; and AMAZON LOGISTICS, INC., a Delaware corporation,**

    **Defendants.**

ELECTRONICALLY FILED
Mar 16 2021
U.S. DISTRICT COURT
Northern District of WV

Civil Action No.: 3:21-cv-40

Judge Gina Groh

## COMPLAINT

**NOW COMES** Plaintiff, Lindsey J. Ceresini, individually and as Administratrix of the Estate of Linda Monroe, by and through her counsel, R. Scott Long, Esquire, and David F. Nelson, Esquire, and the law firm of Hendrickson & Long, PLLC, and as for her Complaint states the following:

### PARTIES

1. Plaintiff, Lindsey J. Ceresini, individually and as the Administratrix of the Estate of Linda Jean Monroe, is an individual residing in Charles Town, Jefferson County, West Virginia. Decedent Linda Jean Monroe also resided in Jefferson County, West Virginia at the time of her death on September 14, 2020.

1

2. Plaintiff is the lone surviving child of Linda Jean Monroe and nearest statutory relative of Linda Jean Monroe, who died without a Will. A copy of the Letter of Administration appointing Ms. Ceresini as the Administratrix of the Estate of Linda Jean Monroe executed by the Jefferson County Clerk is incorporated by reference and attached hereto as Exhibit A.

3. Defendant Neftali Vigil Gonzales ("Gonzales") is an individual residing in the Commonwealth of Virginia. On the day of the accident that is the subject of this civil action, Gonzales was operating a commercial motor vehicle in West Virginia.

4. Defendant Cruz Logistics, Inc. ("Cruz") is a Maryland corporation having its principal place of business in the State of Maryland. At all times relevant, Cruz was engaged in business in West Virginia.

5. Defendant Parcel Delivery Express, Inc. ("PDX") is a Maryland corporation having its principal place of business in the State of Maryland. At all times relevant, PDX was engaged in business in West Virginia.

6. Amazon.com, Inc. ("Amazon.com") is a Delaware corporation having its principal place of business in the State of Washington. At all times relevant, Amazon.com was doing business in West Virginia, throughout the United States, and internationally.

7. Amazon.com Services, LLC., formerly known as Amazon.com Services, Inc. and Amazon Fulfillment Services, Inc. ("Amazon Services"), is a Delaware limited liability company having its principal place of business in the State of Washington. Amazon Services is a wholly-owned subsidiary of Amazon.com, registered to do business in West Virginia and at all times relevant was doing business in West Virginia.

8. Amazon Logistics, Inc. ("Amazon Logistics") is a Delaware corporation having its principal place of business in the State of Washington. At all times relevant, Amazon Logistics was doing business in West Virginia.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction in the matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because the motor vehicular accident giving rise to this claim occurred in Charles Town, Jefferson County, West Virginia, a location within this district.

## FACTUAL BACKGROUND

11. Amazon.com is a global corporation serving customers through online and physical stores, focusing on selection, price and, convenience. It offers customers access to its products and offerings through, among other things, internet websites, mobile apps, and physical stores. It offers customers low prices along with fast, and in many instances, free delivery. In the United States, Amazon.com fulfills its customer orders through a fulfillment network generally known as the Amazon Delivery Network. The Amazon Delivery Network is operated by Amazon.com together with its wholly-owned subsidiaries, including Amazon Services and Amazon Logistics. (Amazon.com, Amazon Services, and Amazon Logistics are hereinafter collectively referred to as "Amazon.") In 2020, Amazon business operations had net sales of $386 billion and net income in excess of $21 billion.

12. The Amazon Delivery Network is massive and operates 365 days a year. To operate the network, Amazon utilizes its own assets and third parties that it calls "Amazon Delivery

Service Partners," such as PDX and Cruz.  At all times, however, Amazon maintains rigorous, specific, and detailed control over the work and the products traveling through the Amazon Delivery Network from the time of order to the completion of delivery.  With Amazon's approval, Amazon Delivery Service Partners, such as PDX, frequently contract with other contractors like Cruz to meet the demands of the Amazon Delivery Network.

13. At all times, Amazon diligently protects its right to control the details, means, and methods of the service and delivery work of all entities within the Amazon Delivery Network, including entities such as PDX and Cruz.

14. By strictly controlling all activity within the Amazon Delivery Network, Amazon views its use of Amazon Delivery Service Partners as a cost-saving strategy to hold down product pricing and ensure timely delivery.  Amazon has concluded that providing timely delivery, low prices, and shipping offers are fundamental to its future success.  In other words, the efficient and fast operation of the Amazon Delivery Network is essential to Amazon's on-line and digital sales business model.

15. Within its business culture and throughout the Amazon Delivery Network, Amazon has consistently pushed the philosophy espoused by Amazon's founder, Jeff Bezos, a philosophy which emphasizes speed over all attributes: as Jeff Bezos made clear in the early days of Amazon, he valued people who can perform tasks "in about one-third the time that most competent people think possible."

16. This wrongful death suit involves a fatal crash caused by a driver hauling Amazon goods traveling within the Amazon Delivery Network.

17. At approximately 3:58 p.m. on September 14, 2020, a clear and dry day, Linda Jean Monroe ("Ms. Monroe") was stopped on Augustine Avenue at a red light at the intersection of US

Route 340 (Berryville Pike) and Augustine Avenue in Charles Town, Jefferson County, West Virginia (hereinafter "Augustine intersection"). Ms. Monroe, age 64, was operating a 2010 Honda CRV that she owned. She was first in line at the Augustine intersection waiting for the traffic-control signal to turn green.

18. At approximately the same time, Defendant Gonzales, an employee and agent of Defendant Cruz, and agent of PDX and Amazon, while acting within the course and scope of his employment and agencies, was operating 2014 Freightliner M2 (hereinafter "Box Truck") traveling southbound in the right lane of US 340 approaching the Augustine intersection. The Box Truck was owned, operated, driven, leased, maintained, equipped, serviced, repaired, entrusted, and/or controlled by Cruz, PDX and Amazon.

19. During the Box Truck's approach to the Augustine intersection, the traffic-control signal device controlling the southbound traffic turned from green to yellow. Subsequently, the lights on the traffic device turned from yellow to red. Two seconds after the lights controlling the southbound traffic turned red, the traffic-control device controlling the traffic stopped on Augustine Avenue turned green.

20. After the Augustine Avenue traffic-control signal turned green, Ms. Monroe began to move her vehicle forward to execute a left-hand turn onto US 340 to head northbound. Her vehicle entered the Augustine intersection where it was struck by the Box Truck.

21. The Box Truck struck Ms. Monroe's vehicle on the left side in the driver's side door area in a catastrophic "T-Bone" fashion. This collision occurred in the right-hand lane of the southbound lane of US 340.

22. As a proximate result of the crash, Ms. Monroe's Honda CRV was crushed and she suffered multiple devastating bodily injuries. Although EMS personnel on the scene attempted

life-saving measures, Ms. Monroe ultimately succumbed to her injuries and died at approximately 4:18 PM on September 14, 2020. Unfortunately, Ms. Monroe endured great pain, and suffering during the approximately 20 minutes she survived after the traumatic impact.

23. In callous disregard of Ms. Monroe's life-threatening injuries, great pain, and suffering, Defendant Gonzales failed to offer or render any aid to Ms. Monroe following the collision, but instead began taking vehicle and crash scene photographs and engaging in communication protocols within the Amazon Delivery Network. After the crash, the products on the truck were offloaded and then delivered through the Amazon Delivery Network.

24. The traffic-control signal lights were functioning as designed at the time of the collision.

25. As he approached the Augustine intersection, Defendant Gonzales passed a flashing yellow caution signal (W. Va. Code § 17C-3-7) approximately 1800 feet from the Augustine intersection alerting him to the existence of an intersection ahead. His view of the intersection was clear and unimpeded. As he continued toward the intersection, the traffic-control-signal turned yellow and then red. Despite traveling at over 50 miles per hour in a more than 20,000 lb. vehicle, Defendant Gonzales ignored the flashing yellow caution signal, the subsequent yellow traffic-control signal, and the ensuing red traffic-control signal and entered the controlled intersection. He failed to brake, swerve, or take any evasive action until less than a second before the collision with Ms. Monroe's vehicle.

26. More than 10 seconds elapsed from the time the Augustine intersection traffic-control signal first turned yellow to the time of impact. Defendant Gonzales, who traveled over 750 feet in this period, had more than sufficient time and distance to bring the Box Truck to a stop and prevent the collision and Ms. Monroe's tragic death.

27. Defendant Gonzales chose to ignore the intersection flashing yellow caution signal, the yellow traffic-control signal in the intersection, the red traffic-control signal in the intersection. Although he had multiple warnings to slow and stop as well as ample time and distance to do so, he willfully, recklessly and with utter disregard of the law and rights and safety of others ran the red traffic-control signal, killing Ms. Monroe.

28. Defendant Gonzales, as an employee and agent acting withing the scope and course of his employment and agency, was exclusively transporting Amazon products in the Box Truck at the time of the accident. The Box Truck, which he was operating as an agent for PDX and Amazon, had multiple skids of sealed Amazon labeled cardboard boxes with Amazon products at the time of the crash. All of these products were still part of and within the control of, the Amazon Delivery Network.

29. At all times relevant herein, defendant Gonzales was under the control of defendants Cruz, PDX, and Amazon. Cruz and its employee, Gonzales, were required to comply with Amazon requirements, polices, practices, and procedures with respect to the means and methods applicable to the delivery of Amazon products.

30. PDX and Amazon have a relationship which is governed by a contract, Delivery Provider Term of Service Work Order, or a similar Master Agreement, hereinafter referred to as the Amazon "Master Agreement." PDX, in turn, has an Agreement or contract with Cruz logistics governing their relationship. Cruz, however, is bound by the material terms of the Amazon Master Agreement.

**COUNT I - NEGLIGENCE**
**(Defendant Gonzales)**

31. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1-30 of this Complaint.

32. Defendant Gonzales had a duty to exercise reasonable case under the circumstances.

33. Defendant Gonzales negligently, recklessly, willfully and with wanton disregard of his legal obligations owed to Ms. Monroe, breached his duty to exercise reasonable care.  His failure to exercise reasonable care under the circumstances included, but is not limited to, his failure to:

    (a) maintain control of the Box Truck in violation of W. Va. Code § 17C-6-1;

    (b) yield to Ms. Monroe at the Augustine intersection in violation of W. Va. Code § 17C-9-1, *et seq.*;

    (c) stop at the red traffic-control signal in the Augustine intersection in violation of W. Va. Code §§ 17C-3-4(a) and 17C-3-5(c)(1); and

    (d) take evasive or braking action to avoid the collision.

34. It was reasonably foreseeable that by failing to stop at a red traffic-control device that a crash or collision with another vehicle would occur.

35. As a direct and proximate result of Defendant Gonzales' acts and omissions, Ms. Monroe experienced great pre-death pain, suffering, mental anguish, and death.  The Estate of Linda Jean Monroe and its beneficiaries also suffered losses as set forth in West Virginia's Wrongful Death Act, W. Va. Code § 55-7-6(c)(1) and (2).

**COUNT II - NEGLIGENCE**
**(Defendant Cruz)**

36. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1-35 of this Complaint.

37. Cruz through its employee, agent and representative, Defendant Gonzales, had a duty to exercise reasonable case under the circumstances.  Defendant Gonzales was acting within the scope of his employment at the time of the crash.

38. Cruz, in conjunction with Defendants Amazon and PDX, exercised control over the methods and means by which Defendant Gonzales performed his responsibilities as a delivery truck driver for Cruz, PDX, and Amazon. Cruz is vicariously liable for the actions of its employee and agent Defendant Gonzales.

39. Cruz through its employee, agent and representative, Defendant Gonzales, negligently, recklessly, willfully, and with wanton disregard of its legal obligations owed to Ms. Monroe, breached its duty to exercise reasonable care. Cruz's failure to exercise reasonable care under the circumstances included, but is not limited to, Defendant Gonzales' failure to:

(a) maintain control of the Box Truck in violation of W. Va. Code § 17C-6-1;

(b) yield to Ms. Monroe at the Augustine intersection in violation of W. Va. Code § 17C-9-1, *et seq.*;

(c) stop at the red traffic-control signal in the Augustine intersection in violation of W. Va. Code §§ 17C-3-4(a) and 17C-3-5(c)(1); and

(d) take any evasive actions to avoid the collision.

40. As a direct and proximate result of Defendant Cruz's actions and omissions, the subject crash occurred, and Ms. Monroe experienced great pre-death pain, suffering, mental anguish, and death. The Estate of Linda Jean Monroe and its beneficiaries also suffered losses as set forth in West Virginia's Wrongful Death Act, W. Va. Code § 55-7-6(c)(1) and (2).

## COUNT III - NEGLIGENCE
### (Defendant PDX)

41. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1-40 of this Complaint.

42. PDX had an agreement with Cruz which included terms and conditions controlling the pick-up and delivery of Amazon products within the Amazon Delivery Network. Cruz was retained by PDX to act as a PDX delivery service provider transporting Amazon products pursuant

to the Amazon Master Agreement. PDX controlled which of the loads that it obtained from Amazon would be fulfilled by Cruz in a manner identical to PDX. Additionally, PDX utilized Cruz performance data and held out Cruz' work as its own to Amazon for its benefit within the Amazon Delivery Network. As such, Cruz and its employees, were acting as agents for PDX.

43. PDX provided Cruz with the Amazon Master Agreement which set for the terms, conditions, policies, and procedures which Cruz was expected to follow. Amazon required Cruz to comply with all requirements imposed by Amazon upon Amazon Delivery Service Partners operating within the Amazon Delivery Network, including, but not limited to:

(a) The use of sophisticated tracking software and other apps, including the Amazon Relay application, on cellular devices providing tracking services for the trucks and products being delivered and providing mandatory driving directions;

(b) The use of logistics to dictate pick-up and delivery points with strict time requirements with penalties to PDX or Cruz should Amazon's expectations not be satisfied;

(c) The use of training materials, media and consultants to provide delivery and safety training for PDX and Cruz and their drivers to ensure that they complied with "strict policies" to "ensure safety" for products being delivered;

(d) The restriction on the use of truck cargo space for the exclusive transport of Amazon products; and,

(e) The use of software applications such as Relay to monitor and assess driver and company efficiency.

44. PDX, in conjunction with Defendant Amazon, exercised, or had the right to exercise, material, and substantial control over the operations, methods, and means by which Defendants Cruz and Gonzales performed their responsibilities. This control included, but is not limited to:

(a) providing incentives for Cruz and Gonzales to accept a higher volume of loads from Amazon;

    (b) providing disincentives to the taking of breaks or vehicle stoppages during the delivery schedule;

    (c) the assignment of delivery routes;

    (d) the monitoring of vehicle speeds and travel;

    (e) rewarding timely deliveries or punishing the failure to make timely deliveries;

    (f) providing rewards for the usage of the Relay app, an app which required the input of data through an Amazon proprietary system;

    (g) requiring that Amazon and PDX dispatchers and agents be able to reach Cruz and its drivers during the transport process;

    (h) requiring the termination of delivery drivers of Amazon products for failing to comply with the terms, conditions, policies and procedures set forth in the Master Agreement and other agreements and/or failing to meet the goals and expectations of Amazon;

    (i) staging delivery drivers' routes;

    (j) ensuring that the delivery driver dispatchers were Amazon employees;

    (k) having authority to require the termination of delivery drivers from handling Amazon parcels;

    (l) providing delivery driver rules;

    (m) requiring parcels delivered were in Amazon packaging;

    (n) requiring that all paperwork, texts and email messaging associated with Amazon parcels be generated only by Amazon; and

    (o) requiring that delivery drivers meet specific Amazon criteria.

    45.    PDX is vicariously liable for the actions of Defendants Cruz and Gonzales acting in the scope of their agency within the Amazon Delivery Network.

    46.    PDX and its agents Defendants Gonzales and Cruz for whom it is vicariously liable had a duty to exercise reasonable care under the circumstances.

47. PDX and it agents Defendants Gonzales and Crux, for whom it is vicariously liable, acted negligently, recklessly, willfully and with wanton disregard of its legal obligations owed to Ms. Monroe and breached its duty to exercise reasonable care. PDX's failure to exercise reasonable care under the circumstances included, but is not limited to, Defendant Gonzales' failure to:

    (a) maintain control of the Box Truck in violation of W. Va. Code § 17C-6-1;

    (b) yield to Ms. Monroe at the Augustine intersection in violation of W. Va. Code § 17C-9-1, *et seq.*;

    (c) stop at the red traffic-control signal in the Augustine intersection in violation of W. Va. Code §§ 17C-3-4(a) and 17C-3-5(c)(1); and

    (d) take any evasive actions to avoid the collision.

48. As a direct and proximate result of Defendant PDX's actions and omissions and the ensuing crash, Ms. Monroe experienced great pre-death pain, suffering, mental anguish, and death. The Estate of Linda Jean Monroe and its beneficiaries also suffered losses as set forth in West Virginia's Wrongful Death Act, W. Va. Code § 55-7-6(c)(1) and (2).

**COUNT IV - NEGLIGENCE**
**(Amazon Defendants)**

49. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1-48 of this Complaint.

50. The Amazon Master Agreement included terms and conditions controlling all material aspects of the shipping and handling of products, parcels, and materials within the Amazon Delivery Network.

51. Cruz was retained by PDX on Amazon's behalf to assume PDX's role in delivering Amazon products pursuant to the Amazon Master Agreement and within the Amazon Delivery Network. As such, Cruz, its employees, agents and representatives, were acting as agents for

Amazon and were delivering products within the Amazon Delivery Network, over which Amazon exercised material and substantial control.

52. Amazon required PDX and Cruz, and their respective employees, agents and representatives, to comply with all of its requirements with respect the delivery of Amazon products. These requirements included, but were not limited to:

(a) The use of sophisticated tracking software and other apps for use on cellular devices providing tracking services for the trucks and products being delivered and mandatory driving directions;

(b) The use of logistics to dictate pick-up and delivery points with strict time requirements with penalties should Amazon's expectations not be satisfied;

(c) The use of training materials and consultants to provide safety training for PDX, Cruz, and their drivers to ensure that they complied with Amazon's specific operational policies;

(d) The restriction on the use of truck cargo space for the exclusive use of Amazon products; and

(e) The use of applications or licensed software such as "Amazon Relay" to assess driver efficiency.

53. Amazon exercised, or had the right to exercise, material and substantial control over the operations, means, and methods of Defendants PDX, Cruz and Gonzales employed in performing their responsibilities within the Amazon Delivery Network. This control included, but is not limited to:

(a) providing incentives for PDX and Cruz to accept a higher volume of loads from Amazon;

(b) providing disincentives to the taking of breaks or vehicle stoppages during the delivery schedule;

(c) the assignment of delivery routes;

(d) the monitoring of vehicle speeds and travel;

(e) rewarding timely deliveries or punishing for failing to make timely deliveries;

(f) providing rewards for the usage of the Relay app, an app which required the input of data through an Amazon proprietary system;

(g) the requirement that Amazon dispatchers and agents be able to reach Cruz or its drivers during the delivery process;

(h) requiring the termination of delivery drivers of Amazon parcels for failing to comply with the terms, conditions, policies and procedures set forth in the Master Agreement and other agreements and/or failing to meet the goals and expectations of Amazon;

(i) staging delivery drivers' routes;

(j) ensuring that the delivery driver dispatchers were Amazon employees;

(k) having authority to require the termination of delivery drivers from handling Amazon parcels;

(l) providing delivery driver rules;

(m) requiring parcels delivered be in Amazon packaging;

(n) requiring that all paperwork, texts and email messaging associated with Amazon parcels were generated only by Amazon; and

(o) requiring that delivery drivers meet specific Amazon criteria.

54. Amazon is vicariously liable for the actions of Defendants PDX, Cruz, and Gonzales while acting in the scope of their agency within the Amazon Delivery Network.

55. Amazon, and its agents and representatives Gonzales, Cruz, and PDX, for whom they are vicariously liable, had a duty to exercise reasonable care under the circumstances.

56. Amazon, and their agents Defendants PDX, Cruz, and Gonzales, for whom they are vicariously liable, acted negligently, recklessly, willfully, and with wanton disregard of the legal obligations owed to Ms. Monroe and breached the duty to exercise reasonable care. Amazon's failure to exercise reasonable care under the circumstances included, but is not limited to, Defendant Gonzales' failure to:

    (a) maintain control of the Box Truck in violation of W. Va. Code § 17C-6-1;

    (b) yield to Ms. Monroe at the Augustine intersection in violation of W. Va. Code § 17C-9-1, *et seq.*;

    (c) stop at the red traffic-control signal in the Augustine intersection in violation of W. Va. Code §§ 17C-3-4(a) and 17C-3-5(c)(1); and

    (d) take any evasive actions to avoid the collision.

57. As a direct and proximate result of Defendant Amazon's actions and omissions, a crash occurred, and Ms. Monroe experienced great pre-death pain, suffering, mental anguish, and death. The Estate of Linda Jean Monroe and its beneficiaries also suffered losses as set forth in West Virginia's Wrongful Death Act, W. Va. Code § 55-7-6(c)(1) and (2).

## COUNT V – JOINT VENTURE

58. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1-57.

59. At all times material herein, Defendants Amazon, PDX and Cruz formed an association to carry out a single business enterprise for profit, for which purpose they combined their property, money, efforts, skill, and knowledge. This association constitutes a joint venture. Therefore, these defendants are vicariously liable for the respective negligent and tortious acts or omissions of one another.

## COUNT V - PUNITIVE DAMAGES

60. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1-59.

61. The acts and omissions set forth herein demonstrate that Defendants acted with a conscious, reckless, outrageous, and utter indifference to the health, safety, and welfare of Ms. Monroe.

62. Punitive damages are justified to punish Defendants for their conscious, reckless, outrageous, and utter indifference which resulted in Ms. Monroe's serious injuries and ultimate death.

63. Punitive damages will serve to deter Defendants from emphasizing speed and efficiency over safety within the Amazon Delivery Network and otherwise for placing financial considerations over human life and safety.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants for:

(a) An amount of compensatory damages to be determined by a jury according to the laws of the State of West Virginia;

(b) An amount of punitive damages to be determined by a jury according to the laws of the State of West Virginia and W.Va. Code §55-7-29;

(c) Costs and attorneys' fees incurred in this matter;

(d) Pre-judgment and post-judgment interest as provided by law; and

(e) Any and all other damages allowable by law and relief that may be deemed justified by the Court.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES.**

        **LINDSEY J. CERESINI, individually and as Administratrix of the Estate of LINDA JEAN MONROE, Deceased,**

        **By Counsel.**


        */s/ David F. Nelson*      *03/16/2021*
        R. Scott Long, Esquire (#2238)
        David F. Nelson, Esquire (#5754)
        **HENDRICKSON & LONG, PLLC**
        214 Capitol Street (zip 25301)
        PO Box 11070
        Charleston, West Virginia 25339
        (304) 346-5500
        (304) 346-5515 (facsimile)
        scott@handl.com
        dnelson@handl.com